1   JEFFREY K. GARFINKLE (SBN 153496)
    BUCHALTER NEMER
2   A Professional Corporation
    18400 Von Karman Avenue, Suite 800
3   Irvine, California 92612
    Telephone: (949) 760-1121
4   Facsimile: (949) 720-0182
    Email:  jgarfinkle@buchalter.com
5
    Attorneys for Movants
6   RONALD N. TUTOR and LIBRARY ASSET
    ACQUISITION COMPANY, LTD.
7

8               **UNITED STATES BANKRUPTCY COURT**

9               **CENTRAL DISTRICT OF CALIFORNIA**

10                  **LOS ANGELES DIVISION**

11

12  In re                              Case No.  2:10-bk-19924-BR

13  R2D2, LLC,                         Chapter: 11

14                  Alleged Debtor.    **RONALD N. TUTOR AND LIBRARY
                                       ASSET ACQUISITION COMPANY, LTD'S
15                                     OPPOSITION TO MOTION FOR  RULE
                                       2004 EXAMINATION AND PRODUCTION
16                                     OF DOCUMENTS**

17                                     [Notice Of Filing Oppositions Concurrently
                                       Under Separate Covers]
18
                                       **HEARING**
19
                                       Date:       July 20, 2010
20                                     Time:       10:00 a.m.
                                       Place:      Crtrm 1668
21                                                 255 E. Temple St. 90012
                                       Judge:      Russell
22

23

24

25

26

27

28

## I.    **INTRODUCTION**

Interim Chapter 11 Trustee, Ronald L. Durkin's ("Interim Trustee") motion for a Rule 2004 examination and production of documents ("Motion") from Ronald N. Tutor ("Tutor") and Library Asset Acquisition Company, LTD ("LAAC") attempts to confuse the Court by combining the justification for the examination of David Bergstein ("Bergstein") with Tutor and LAAC.  A close review of the Motion reveals that the Interim Trustee lacks any legitimate basis for examining Tutor and LAAC.

Tutor was not an insider of the Debtor.  LAAC is merely a lender to several of the Alleged Debtors.

The Court apparently appointed an Interim Trustee for the purpose of identifying the assets of the Alleged Debtors pending a determination by the Court of whether the Alleged Debtors should be in bankruptcy.  The Interim Trustee has no authority to investigate or bring preference actions, fraudulent transfer actions or take any action to recover transferred assets from third parties prior to the filing of the involuntary bankruptcy.  Instead, pending the Court's ruling on the foundational issue of whether there should be bankruptcy proceedings for the Alleged Debtors, the Interim Trustee's role is limited to preserving the *status quo* as of the filing of the involuntary petitions.

The Motion describes in detail that the sole owner and manager of the Alleged Debtors, Bergstein, is purportedly refusing to provide the Interim Trustee with information concerning the assets of the Alleged Debtors.  Motion 7-16.  The Interim Trustee also complains that "For reasons unknown to the Interim Trustee, Bergstein caused four of the Alleged Debtors to become plaintiff in the litigation against Zwirn without consulting with the Interim Trustee."  Motion 6:25-27.  The Interim Trustee can obtain all of the information he needs concerning the Alleged Debtors from Bergstein and the Interim Trustee has already sought an order to compel an examination and production of documents from Bergstein.

On the other hand, there is no evidence that either Tutor or LAAC have any relevant information or involvement with the Alleged Debtors.  The Interim Trustee admits that Tutor ceased to have any ownership interest in the Alleged Debtors in January 2009 – more than one

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
IRVINE

1

1  year before the involuntary bankruptcy was filed.  Motion 6:10-17.  Moreover, the evidence

2  shows that Bergstein is in possession of the financial records for the Alleged Debtors.  Motion

3  13:9-28; 14:4-28.

4      LAAC's only purported involvement with the Alleged Debtors is the acquisition of a loan

5  secured by a movie library formally owned by one of the Alleged Debtors.  That acquisition took

6  place in August 2009 – seven months after Tutor ceased to have any ownership interest in the

7  Alleged Debtors and eight months before the involuntary petition was filed.  LAAC never had

8  any ownership interest in any of the Alleged Debtors and it was not a manager of the Alleged

9  Debtors.  The Interim Trustee is aware of LAAC's acquisition of the loan and, at this point, there

10  is no basis for him to seek further information from LAAC because LAAC's status as a creditor

11  of some of the Alleged Debtors is irrelevant to the Interim Trustee's current duties.

12      It is troubling that the Interim Trustee suggests that without the Rule 2004 examination of

13  Tutor and LAAC, he cannot possibly track down the assets of the Alleged Debtors.  Motion

14  17:13-14.  Nothing could be further from the truth.  In fact, if the Interim Trustee reviews the first

15  four exhibits to his Request for Judicial Notice, he will find declarations of individuals familiar

16  with the accounting, documentation, assets, liabilities and all of the information the Interim

17  Trustee claims he so "desperately" needs.  Moreover, these declarations expressly contradict the

18  Interim Trustee's assertion that Tutor has the accounting information purportedly justifying

19  Tutor's examination.

20      Prior to examining Tutor or LAAC, the Interim Trustee must first make at least some

21  effort to obtain information from the people who admittedly have such information.  At that point,

22  if facts are developed to justify the belief that Tutor or LAAC have information concerning assets

23  belonging to the Alleged Debtors, then the Court can re-evaluate whether a Rule 2004

24  examination should be permitted.  In addition, prior to the Court authorizing a fishing expedition

25  into Tutor's and LAAC's pre-petition dealings with the Alleged Debtors, the Court should first

26  decide whether there will be Chapter 11 cases involving the Alleged Debtors, because there may

27  never be such cases and the Interim Trustee will have unnecessarily wasted time and money.

28

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
IRVINE

**OPPOSITION TO MOTION FOR RULE 2004 EXAMINATION AND PRODUCTION OF DOCUMENTS**

1   Accordingly, the Motion should be denied and/or a protective order preventing the examination

2   and production of documents should be entered.

3   **II.    THE INTERIM TRUSTEE FAILED TO JUSTIFY A RULE 2004 EXAMINATION
        OF TUTOR OR LAAC AND CANNOT JUSTIFY THE NUMEROUS IMPROPER
4       REQUESTS FOR DOCUMENTS**

5       The Interim Trustee contends that he needs to conduct the examination of Tutor and

6   LAAC in order to safeguard the assets of the Alleged Debtors.  Motion 17:13-18.  He asserts that

7   (1) Tutor is a former co-owner of the Alleged Debtors, (2) Tutor guaranteed loans made to the

8   Alleged Debtors, and (3) Tutor indirectly owns and/or controls assets of or liens against motion

9   picture properties that were transferred from the Alleged Debtors to LAAC.  *Id.*  These alleged

10  bases for an examination do not survive scrutiny.

11      In addition, the Interim Trustee seeks private third party documents that have nothing to

12  do with the assets of the Alleged Debtor.  The Interim Trustee's improper requests further

13  demonstrate that the examination and document requests are not intended for any legitimate

14  purpose.

15      **A.    There Is No Basis To Examine Tutor Or LAAC.**

16      Tutor's status as a co-owner of the entity R2D2, LLC – not any other Alleged Debtor –

17  ended in January 2009, more than one year before the involuntary petition was filed.  Motion

18  7:11-12.  There is no evidence that Tutor possesses any knowledge or documentation of what

19  happened to the assets of R2D2, LLC during the year and a half that has passed, since his

20  ownership interest terminated.  Instead, the Motion makes clear that such information is in the

21  possession of Bergstein, including computer records, bank statements, and the physical office

22  location.  Motion 13:9-28; 14:4-28.  Thus, the Interim Trustee effectively concedes in the Motion

23  that the information he seeks is in the possession of Bergstein.   Tutor's status as a former co-

24  owner of one of the Alleged Debtors is irrelevant.

25      The Interim Trustee cannot rely upon Tutor's guarantee of debt owed by the Alleged

26  Debtors as the basis for a Rule 2004 examination.  To the extent Tutor personally guaranteed a

27  loan, that guarantee does not affect the assets of the Alleged Debtors.  Similarly, the Interim

28  Trustee cannot support his assertion that the April 27, 2010 state court lawsuit against Zwirn

1   (RJN Ex. 9) establishes that Tutor has "extensive knowledge" of loans made to the Alleged

2   Debtors.  Motion 13:6-7.  Instead, the allegations in that complaint establish that Bergstein dealt

3   with those loans (RJN Ex. 9):

4           ¶ 18    Describes $23 million Capital Loan guaranteed by Bergstein

5           ¶ 23    Describes representations were made to Bergstein not Tutor

6           ¶ 28    Describes representations were made to Bergstein not Tutor

7           ¶ 29    Instructions concerning operation of CT1 given to Bergstein

8           ¶ 31    Bergstein questioned need to refinance the loans

9           ¶ 32    Communications concerning loans were made to Bergstein

10          ¶ 41    Pressure placed on Bergstein concerning investment of funds

11  Read as a whole, the complaint supports the conclusion that Bergstein was responsible for the

12  loans, how the proceeds were used, and arranged for any guarantees.  Thus, the complaint

13  actually supports the conclusion that Bergstein should be examined, not Tutor.

14          Similarly, the Interim Trustee leaps to the conclusion that Tutor somehow caused the

15  Alleged Debtors to join as co-plaintiffs in that lawsuit.  Motion 13:1-2.  Once again, the Interim

16  Trustee is overreaching because Tutor transferred any ownership interest and control over the

17  Alleged Debtors in January 2009 -- 15 months before the lawsuit was filed.  However, Bergstein

18  could have made that decision to include the Alleged Debtors in the lawsuit, because Bergstein

19  was in control of the entities at the time and Bergstein is a party to that lawsuit.

20          The August 2009 pre-bankruptcy sale of certain assets is not a legitimate matter for a Rule

21  2004 examination at this time.  The Court has not yet considered whether bankruptcy is justified.

22  The appointment of the Interim Trustee was premised upon the allegations that Bergstein was

23  taking money from the Alleged Debtors' bank accounts and failed to maintain adequate

24  accounting records.  RJN Exs. 1-4. The apparent purpose in appointing the Interim Trustee was to

25  maintain whatever assets existed and to prevent dissipation of assets.  There is no indication that

26  the Court intended that the Interim Trustee was to chase assets transferred more than eight months

27  before the bankruptcy filings.  There will be ample opportunity for a permanent trustee to

28  examine such issues, if the Court determines that bankruptcy is appropriate.

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
IRVINE

4

There is no justification for a Rule 2004 examination of Tutor or LAAC.  Instead, the Interim Trustee has provided justification for the examination of Bergstein.

**B.    The Overly Broad Document Requests Further Demonstrate That There Is No Legitimate Need For The Examination Of Tutor Or LAAC.**

The Interim Trustee's document requests are overly broad and have no relevance to any legitimate inquiry for a Rule 2004 examination.  Instead, the scope of the requests establishes that the Interim Trustee seeks this examination for an improper purpose.

Among the more extreme examples of improper requests are:

Request No. 2 – All articles of organization and operating agreements for LAAC.

Request No. 3 – All articles of organization and operating agreements of Pangea.

Request No. 4 -- All articles of organization and operating agreements of TFC.

Request No. 11 – All producer statements, checks, bank statements, wire transfers instructions, and wire transfer confirmations that    refer to any revenues and/or distribution fees from any asset that Tutor, LAAC, Pangea, and/or TFC Library acquired from any of the Alleged Debtors.

Request No. 12 – All emails and correspondence that refer to any of the Alleged Debtors between Tutor and any member of the Zwirn Group.

Request No. 13 – All checks, wire transfers instructions, and wire transfer confirmations that reflect any payment made to any member of the Zwirn Group with respect to any loan on which any of the Alleged Debtors was an obligor.

Motion, Ex. 27, 30-31.  These requests have nothing to do with locating assets of the Alleged Debtors.

Requests 2-4 seek operating information for third party entities.  These agreements could not possibly have anything to do with the Alleged Debtors' assets.  Instead, they are protected proprietary information with no relationship to this involuntary bankruptcy proceeding.

1    Similarly, Request 11 seeks the income of third parties.  The Interim Trustee is again seeking

2    third parties' confidential and proprietary business information.  The income generated by

3    property sold by the Alleged Debtors to a third party, prior to the involuntary bankruptcy, is not

4    subject to any examination by the Interim Trustee.  Request 12 seeks correspondence between

5    third parties which contains any reference to the Alleged Debtors, whether relevant to this

6    proceeding or not.  Finally, Request 13 seeks information about what third parties paid to Alleged

7    Debtors' lenders to acquire debt owned by the Alleged Debtors.  This information has no

8    relevance to the Interim Trustee's purported objective of determining what the Alleged Debtors'

9    assets are.  It does not even alter the Alleged Debtors' liability on those loans.  It is irrelevant

10    information sought for harassment purposes.

11        Tutor and LAAC have already informed the Interim Trustee that they do not have

12    documents such as financial statements, bank statements, tax returns, or operating agreements for

13    the Alleged Debtors set forth in Requests 1, 5, 6, and 7.   Tutor and LAAC already turned over

14    the documents requested in Requests 8 and 9, showing the acquisition of assets from the Alleged

15    Debtors.

16        The Interim Trustee has thus already been given the information showing the pre-petition

17    transfer of assets from the Alleged Debtors.  That information is all that the Interim Trustee is

18    entitled to at this point in these proceedings.  In addition, the Interim Trustee knows that neither

19    Tutor nor LAAC has information concerning other assets of the Alleged Debtors, because they

20    have no documents and Tutor's ownership of R2D2 LLC ended more than a year before the

21    petition was filed.  There is no basis for a Rule 2004 examination of Tutor or LAAC.

22    **III.    THE INTERIM TRUSTEE'S EVIDENCE ESTABLISHES THAT BERGSTEIN
          AND HIS ASSISTANTS ARE THE ONLY PEOPLE WITH INFORMATION**
23    **ABOUT THE ASSETS OF THE ALLEGED DEBTORS**

24        The Interim Trustee contends that he must take the examination of Tutor and LAAC in

25    order to track down the assets of the Alleged Defendants, but the evidence provided in support of

26    the Motion establishes that neither Tutor nor LAAC are the source of information concerning the

27    Alleged Debtors' assets.  The Interim Trustee should be examining Bergstein, Hans Turner,

28    Robert Gertz, and Jeffery Gaul all of whom admit having information that the Interim Trustee is

1  seeking.  However, nowhere in the Motion is there a justification for overlooking these admitted

2  sources of first-hand information concerning the assets of the Alleged Debtors.

3  **A.      Numerous Facts Support a Basis to Examine Bergstein**.

4      The Motion is filled with allegations that Bergstein should be examined.  Bergstein

5  controlled the Alleged Debtors as part of an enterprise.  Motion 7:16-20.  Money from the

6  Alleged Debtors was supposedly transferred to Bergstein's lawyer's trust account.  Motion 8:24-

7  27.  Bergstein filed a declaration with purportedly inadequate explanations of transactions.

8  Motion 11:1-14.  Bergstein controls the offices and information for the Alleged Debtors and

9  Bergstein is taking inconsistent positions concerning the finances of the Alleged Debtors.  Motion

10  12:5-21.  Bergstein would not allow the Interim Trustee to image computers and did not provide

11  an inventory, despite representations that he would do so.  Motion 13-14.  Bergstein made

12  numerous purportedly inconsistent statements.  Motion 17:20 – 18:5.  These allegations have no

13  bearing on the issue of whether Tutor or LAAC should be examined.

14  **B.      The Interim Trustee Ignores Hans Turner, the Former Accountant for the
      Alleged Debtors.**

15

16      The Interim Trustee completely ignores information that could be obtained from Hans

17  Turner.  RJN Ex. 1.  Mr. Turner was the accountant for the Alleged Debtors working for

18  Bergstein.  RJN Ex 1, ¶ 2.  Mr. Turner knows how the accounting work was performed, including

19  what documents should be available and who worked on them.  RJN Ex. 1, ¶ 3.  Mr. Turner can

20  testify about how Bergstein controlled the Alleged Debtors including all of the money and

21  financial information relating to the Alleged Debtors.  RJN Ex. 1, ¶¶ 4-10.  Mr. Turner can testify

22  about Bergstein sweeping cash from the Alleged Debtors' accounts on a daily basis.  RJN Ex. 1, ¶

23  10.  Yet, the Interim Trustee has not requested a Rule 2004 examination of Mr. Turner.

24

25

26

27

28

**OPPOSITION TO MOTION FOR RULE 2004 EXAMINATION AND PRODUCTION OF DOCUMENTS**

**C.**     **The Interim Trustee Ignores Roger Gertz, Who Testified That Bergstein
Hoarded All of the Financial Information of the Alleged Debtors.**

Similarly, the Interim Trustee ignores the declaration of Roger Gertz who provides

testimony that only Bergstein controlled the accounting information.  RJN Ex. 2.  Mr. Gertz

testified:

> **Bergstein Hoards Critical Financial Information**.  I was stunned by the
> fact that no one in the accounting department could provide me with
> anything resembling a balance sheet, general ledger or other financial
> documentation customarily maintained in a corporate accounting
> department.  Nevertheless I . . . approached Bergstein and asked him to
> provide me with the financial data for the Company.  Bergstein's response
> was that he was "working on it" and that he would get "it" to me once he
> was finished.  In fact, however, I never received any financial documents
> from Bergstein, nor to my knowledge was the accounting department
> provided with such documentation at any time prior to my departure from
> the Company in January 2010.

RJN Ex. 2, ¶ 4.

Mr. Gertz was the Chief Operating Office from September 2009 until January 2010.  RJN

Ex. 2, ¶ 1.  Mr. Gertz was responsible for collecting money and interviewed the members of the

accounting department.  RJN Ex. 2, ¶¶ 3-6.  Mr. Gertz was familiar with receivables and

expenses.  RJN Ex. 2, ¶¶ 7-8, 10-13.  Again, instead of seeking to examine Mr. Gertz who

admittedly has substantial information about the assets and liability of the Alleged Debtors, the

Interim Trustee is wasting time and money pursuing Tutor and LAAC.

**D.**     **Jeffrey Gaul Was a Financial Consultant for the Alleged Debtor, but the
Interim Trustee Ignores Information Available from Mr. Gaul.**

The Interim Trustee also ignores information available from Jeffrey Gaul.  Mr. Gaul is a

CPA who was hired as a consultant for the Alleged Debtors in March 2008.  RJN Ex. 4, ¶ 2.  Mr.

Gaul testified by declaration that:

> The entire time I was with the Company, it was managed by [Bergstein],
> who exercised monolithic control over the affairs of the Company.
> As I explain in more detail below, Bergstein micro-managed
> virtually all aspects of daily operations, and this was particularly true in
> my area of involvement, the financial affairs of the Company.  While the
> Company ostensibly had financial managers, such as controllers, chief
> financial officers ("CFOs") and chief operating officers ("COOs"), the
> reality was that in the 22 months I was at the Company there was a
> "revolving door" of such individuals, none of whom were able to exercise

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
IRVINE

8

> authority independent of the constraints placed upon them by Bergstein,
> and none of whom lasted long enough in their position to establish any
> meaningful center of control or responsibility apart from Bergstein.

RJN Ex. 4, ¶ 3.  Mr. Gaul also testifies about: how the accounting department functioned, information hoarding by Bergstein, Bergstein's use of cash and other matters.  Mr. Gaul's declaration establishes that he would be a particularly good person to examine, if the Interim Trustee were actually interested in locating the assets of the Alleged Debtors.

It is surprising that the Interim Trustee has placed such a high priority on examining Tutor and LAAC, when none of the individuals involved in the accounting department at the Alleged Debtors even mentions Tutor.  In fact, reading the evidence strongly suggests that the examination of Tutor will be a waste of time in light of the limited investigation that the Interim Trustee should be undertaking prior to the Court deciding whether there should be a bankruptcy case and appointing a permanent trustee.

The Interim Trustee's lack of any effort to examine the people who worked in the accounting department of the Alleged Debtors and who admittedly have highly relevant, first-hand information demonstrates that the Interim Trustee is misguided in his efforts.

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
IRVINE

**OPPOSITION TO MOTION FOR RULE 2004 EXAMINATION AND PRODUCTION OF DOCUMENTS**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## IV.    <u>CONCLUSION</u>

The Court should deny the Interim Trustee's request for a Rule 2004 examination of Tutor and LAAC, at this time.  The evidence shows that Tutor does not have the information that the Trustee could legitimately seek at this point in these involuntary bankruptcy cases.  The evidence establishes that there are numerous individuals who actually worked in the Alleged Debtors accounting department who are likely to have all of the information the Interim Trustee could need.  The Court needs to push the Interim Trustee back on course and avoid these wasteful motions.  Accordingly, the Motion should be denied and/or a protective order preventing the examination and production of documents should be entered.

DATED: June 10, 2010                          BUCHALTER NEMER
                                                          A Professional Corporation


                                                          By:  /s/ *Jeffrey K. Garfinkle*
                                                          JEFFREY K. GARFINKLE
                                                          Attorneys for Movants
                                                          RONALD TUTOR and LIBRARY ASSET
                                                          ACQUISITION COMPANY, LTD.