FILED & ENTERED

MAY 27 2015

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY fortier    DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
### LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>R2D2, LLC,<br><br>Debtor(s). | Case No.: 2:10-bk-19924-BR<br><br>CHAPTER 11<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING ORDER GRANTING MOTIONS TO DISMISS AND DISMISSING BANKRUPTCY CASES AND ALL RELATED ADVERSARY PROCEEDINGS PENDING THEREIN**<br><br>Date:     April 28, 2015<br>Time:     10:00 a.m.<br>Courtroom:   1668<br>EDWARD ROYBAL BUILDING<br>255 EAST TEMPLE STREET<br>LOS ANGELES, CA 90012 |

This matter is before the Court on the Motion for an Order Dismissing the Debtor's Bankruptcy Case Pursuant to Section 1112(b) of the Bankruptcy Code, Including all of the Adversary Proceedings Pending Therein, filed jointly by Aramid Entertainment Fund Limited, Aramid Liquidating Trust Ltd. and Aramid Entertainment, Inc. (the "AEF Parties") and Screen Capital International Corp. ("SCIC") (the "AEF/SCIC

Motion to Dismiss") on December 24, 2014, and the Motion to Dismiss Debtor's Bankruptcy Case Pursuant to 11 U.S.C. § 1112(b), filed by David R. Bergstein on April 7, 2015 (collectively, the "Motions to Dismiss").

The Motions to Dismiss, which were heard before me on April 28, 2015, seek to dismiss in their entirety the following five bankruptcy cases and all adversary proceedings pending therein:  Thinkfilm LLC, case no. 2:10-bk-19912-BR; R2D2 LLC, case no. 2:10-bk-19924-BR; CT-1 Holdings LLC, case no. 2:10-bk-19927-BR; CapCo Group LLC, case no. 2:10-bk-19929-BR; and Capitol Films Development LLC, case no. 2:10-bk-19938-BR (hereinafter the "Related Cases" and/or "Related Debtors", where applicable).

As set forth in the concurrently entered Order Granting Motions to Dismiss and Dismissing Bankruptcy Cases and All Related Adversary Proceedings Pending Therein ("Dismissal Order"), I carefully considered all of the pleadings and evidence, heard argument of counsel, considered the records from the extensive docket in the Related Case and in all related adversary proceedings pending therein, and find good cause to grant the Motions to Dismiss and dismiss each of the Related Cases and all adversary proceedings pending therein.

The following constitutes my findings of fact and conclusions of law in support of my Dismissal Order.

A.    <u>Introduction and abbreviated chronology of events in the Related Cases</u>

The Related Cases commenced on March 17, 2010 upon the filing of involuntary petitions against the Related Debtors.  In response to emergency motions for the appointment of an interim trustee, I entered orders on March 31, 2010 directing the appointment of a chapter 11 trustee.  Following the entry of orders for relief in the Related Cases, Ronald L. Durkin was appointed the permanent chapter 11 trustee ("Trustee") of the Related Debtors' bankruptcy estates.

For the next over 2-1/2 years, the Trustee and his counsel, Leonard L. Gumport, Esq., engaged in extensive discovery efforts, including a number of depositions of David

1  R. Bergstein, the manager of the Related Debtors, and discovery directed at Mr.
2  Bergstein.
3      Nevertheless, the Trustee filed motions in September 2011 to convert or dismiss
4  the Related Cases.  These motions argued that "in light of [the denial of substantive
5  consolidation motions filed in July 2011], the financial condition of the Debtors, and the
6  distant location of their assets for the time being in various subsidiaries and/or affiliates,
7  the Debtors' bankruptcy estates have no business to reorganize."
8      It was clear that when the Trustee filed his motions to convert or dismiss these
9  Related Cases, he was out of resources to pursue litigation, administer these estates
10 and to prepare a plan of reorganization within a reasonable time.  The only reason that I
11 did not dismiss or convert the Related Cases was that SCIC stepped up and
12 demonstrated its financial ability to pursue the litigation on the estates' behalf.  SCIC
13 and the Trustee stipulated in October 2012 to transfer standing to pursue litigation from
14 the Trustee to SCIC.
15     The stipulations provided, *inter alia*, that "The Trustee believes [the Related
16 Debtors' estates have] valuable Avoidance Actions that can and should be pursued by
17 [the estates], but that [the estates do] not currently have adequate resources to pursue
18 the Avoidance Actions" and that SCIC had agreed to pursue the litigation for the benefit
19 of the estates subject to its and its counsel's right to seek recovery of attorneys' fees
20 and expenses.
21     I approved the stipulations in November 2012, and the dockets in the Related
22 Cases reflect that the Trustee and SCIC in its derivative capacity prosecuted a total of
23 over 160 adversary proceedings.  Unfortunately, their combined efforts over the years
24 have resulted in virtually no recovery for the Related Debtors' bankruptcy estates.
25     Ultimately, SCIC, Aramid and Mr. Bergstein, mortal enemies during the pendency
26 of these Related Cases, decided that they had had enough.  Indeed, Aramid was forced
27 to file its own bankruptcy case.  They agreed to settle their disputes by, *inter alia*, giving
28 Mr. Bergstein a $6 million claim in Aramid's bankruptcy case in the Southern District of

New York. The Trustee's argument that there is something nefarious about their settlement is preposterous. They simply had had enough.

Although the Trustee and his counsel say they are willing to continue with the litigation, a hope and a prayer are no substitute for actual evidence that they have the financial resources necessary to continue with the litigation, to administer these estates and to prepare a plan that will be confirmed within a reasonable time.

I questioned the Trustee's counsel at length at the April 28, 2015 hearing and asked him to point to any evidence in the record of his and the Trustee's financial ability to continue their efforts. While he clearly expressed their *willingness* to continue administration of the Related Debtors' estates and prosecution of the pending litigation, he eventually acknowledged, albeit reluctantly, that there was no such evidence in the record.

B.      The Trustee's and his counsel's blatant abuse of the legal system by improper forum shopping and neglect of their duties to properly manage the affairs of these estates

1.      Filing of schedules by Mr. Bergstein: Mr. Bergstein filed schedules and statements of financial affairs for the Related Debtors in February 2011, in response to motions by the Trustee to compel him to do so, which I had granted in January 2011. He filed amended schedules in October 2012. (He also filed a set of amended schedules in the R2D2 case in July 2011.)

The Trustee filed motions in December 2012 for an order directing Mr. Bergstein to file corrected amended schedules and I entered orders in the Related Cases in February 2013 which granted these motions. Mr. Bergstein filed amended schedules for the Related Debtors on May 8, 2013 in compliance with that order.

Although the Trustee was well aware of problems with the May 8, 2013 schedules, he waited over 2-1/2 years to file a motion before me to require Mr. Bergstein to further amend the schedules. This was a clear neglect of the Trustee's duty to properly administer the estates.

1  Rather than immediately file a motion before me to require Mr. Bergstein to file
2  amended schedules, he somehow convinced the District Court in its order dated August
3  12, 2014 to suggest that I order Mr. Bergstein to file amended schedules by no later
4  than October 1, 2014, even though Mr. Bergstein was not even a party to the appeal
5  before the District Court.
6  At a status conference before me on December 3, 2014, I asked the Trustee's
7  counsel why the Trustee had not followed the proper procedure and filed motions before
8  me, and expressed my concern that without such motions, I would have no basis to
9  order Mr. Bergstein to file amended schedules. The Trustee did not file his motions with
10 me until December 2014. I granted those motions in February 2015 and directed Mr.
11 Bergstein to file amended schedules no later than April 6, 2015. Mr. Bergstein timely
12 complied.
13 It is obvious that the Trustee and his counsel were engaged in blatant forum
14 shopping in bypassing me and complaining to the District Court that, in effect, I was not
15 properly performing my duties by not *sua sponte* ordering Mr. Bergstein to file amended
16 schedules. They were obviously attempting to get rulings of this Court reversed. If the
17 Trustee really felt it was important to get Mr. Bergstein to file amended schedules, he
18 was in neglect of his duties. On the other hand, he most likely felt that in view of his
19 extensive discovery including a number of depositions of Mr. Bergstein, no substantial
20 material facts would be revealed in any amended schedules of which the Trustee and
21 his counsel were not already aware.
22 The following excerpt from the April 28, 2015 hearing transcript illustrates my
23 concerns over the Trustee's failure to timely seek orders from this Court to compel the
24 filing of further schedules during the period between 2013 and 2015, and the Trustee's
25 efforts to obtain rulings from the District Court by mischaracterizing events in these
26 Cases in an obvious attempt to manipulate the judicial system:
27
28

> THE COURT:  . . . I kept asking you, the first I think I heard about the schedules was of [the District Court judge] in an appeal which he said a number of things that by October 21st of 2014, as I recall the year, that I -- that [the District Court] suggested – [the District Court] didn't order.  And, again, I will go through that again, but what a nice little time last time around where you just totally mischaracterized what I said in your brief, . . .  And, indeed, eventually, only after cajoling you, kept asking you why you're going to the District Court and asking, why didn't you just come to me and ask to do it, and your excuse was -- it was at least [Bergstein's former counsel.]  [You] said, "Well, I was relying on him."
>
> What I don't understand is -- and I'll ask you again.  You finally, after I kept asking you, "Well, why don't you just file a motion," and, indeed, when you filed it and I actually reviewed it, you were absolutely right, and I issued the order, but why did you wait all that time if it was that important to you to get these -- the schedules?

April 28, 2015 Transcript at 68:16 – 69:22.

In response, the Trustee's counsel, incredulously, attempted to blame both Mr. Bergstein's former counsel and SCIC for the delay:

> THE COURT:  . . . Let me stop you.  It is a – it's a lame excuse -- I hate to use that term -- to say that you're relying on Mr. Bergstein's counsel to do something you knew that the likelihood that he wouldn't do, and that's why, even though you needed it, . . . that's why you didn't file the motion here?
>
> MR. GUMPORT:  Your Honor, yeah, I did not go running into court for something that an officer of the court had promised me he would do as soon as possible . . .

Id. at 72:5-14.

>THE COURT: . . . By the way, I want to ask you. . . . Maybe you were alluding to it, that somehow SCIC failed in their responsibility by not asking that the schedule be filed. . . .
>
>. . .
>
>Are you seriously saying that you're blaming – I want to know how he got the idea, that is, [the District Court judge], that SCIC was somehow at fault. Did you argue that?
>
>. . .
>
>MR. GUMPORT: They were surely at fault, yes, your Honor. I'm sure I said they were at fault.

Id. 74:5 – 75:13.

I find that the Trustee and his counsel's unwillingness to accept responsibility for their lack of due diligence in attending to administration of these estates troubling. Just as startling is their frivolous attempt to deflect responsibility for their inaction by claiming that SCIC, rather than the Trustee, was responsible for seeking this Court's order requiring Mr. Bergstein to amend the schedules.

Probably the most disturbing aspect of the Trustee's and his counsel's conduct is the blatantly false statement that I refused to follow an "order" of the District Court to order Mr. Bergstein to file amended schedules by October 1, 2014. I was never ordered to order Mr. Bergstein to file schedules. As late as the hearing on May 19, 2015 regarding the Trustee's request for a stay pending appeal of my Dismissal Order, the Trustee's counsel continued with this false argument, which seriously puts into question both the credibility and judgment of both the Trustee and his counsel.

    2.    <u>Substantive consolidation motions</u>: The Trustee filed motions in July 2011 for substantive consolidation of the Related Debtors' bankruptcy estates. The motions included a request for authority to take control of all subsidiaries of the Related Debtors

including, among others, Pangea Media Holdings LLC ("Pangea").

The motions argued, *inter alia*, that "prior to the filing of the Cases, the insiders of the Debtors left them with substantially no unencumbered assets and failed to keep adequate records or to file tax returns," that the affairs of the Related Debtors and the designated entities were so hopelessly entangled that substantive consolidation was necessary to "avoid and unwind the apparent shell game operated by the insiders of the Debtors and the Designated Subsidiaries," and that "the Debtors and the Designated Subsidiaries functioned as a single economic unit and creditors could not reasonably rely upon their separate credit."

I denied the motions in their entirety following a hearing in September 2011, and my order specified that any future request by the Trustee to take actual control of any actual or alleged subsidiaries of the Debtors would require a separate motion for each such non-debtor entity.

The Trustee filed a second set of substantive consolidation motions in the Related Cases in June 2012. These motions again asserted that the entanglement of the Related Debtors' affairs and "hopeless lack of accurate information," among other things, made substantive consolidation both essential and equitable. I denied the motions following a hearing in September 2012.

The Trustee argues that due to the filing of the amended schedules on April 6, 2015, I should consider a yet unfiled third set of motions for substantive consolidation. At the April 28, 2015 hearing, I expressed my opinion that I had actually heard the two prior motions for substantive consolidation, with substantive evidence, and found that the motions did not come close to the evidentiary requirement for substantive consolidation. After reviewing the April 6, 2015 amended schedules, I see no additional cause to change my two prior decisions.

3.     <u>Control of Pangea</u>:  In October 2011, the trustee filed a motion in the R2D2 LLC case for authority to vote R2D2's membership in Pangea in order to, among other things, adopt a resolution to remove Mr. Bergstein as manager and authorize the

Trustee to elect himself manager for the purpose of taking control of the subsidiary. I granted the Trustee's motions following a hearing in November 2011, and entered an order in January 2012 which authorized him to take all actions necessary to effect control of Pangea.

On January 13, 2015, the Ninth Circuit affirmed the District Court's affirmance of my January 2012 order. And yet, as of the April 28, 2015 hearing, the Trustee has taken no steps to deal with this allegedly valuable asset of the R2D2 case, in clear neglect of his duties.

Even more startling is the Trustee's assertion in his opposition to the Motions to Dismiss that "The 4/6/15 Schedules for the first time disclose or admit the following: . . . R2D2 does own Pangea . . .". We all knew since my January 2012 order that the Trustee had full control of Pangea, and yet had not only taken no action, but now appears to make the frivolous argument that Mr. Bergstein's admission is somehow important "new" evidence, apparently supporting the Trustee's unfiled third set of motions for substantive consolidation.

4. <u>Revocation of SCIC's derivative standing</u>: The District Court entered an order on November 24, 2014 in case no. 2:13-cv-09538-PSG[1] entitled "Order GRANTING Motion by Trustee to Protect this Court's Jurisdiction and to Protect the Estates by [1] Substituting the Trustee for SCIC as the Representative of the Estates; and [2] Revoking the Derivative Status of SCIC which stated, in pertinent part:

> For the reasons discussed above, the Trustee's motion (Dkt. # 58) is GRANTED, and the Bankruptcy Court is ORDERED to enter an order that (1) substitutes the Trustee for SCIC as the representative of the Estates; and (2) revokes the authority of SCIC to act derivatively on behalf of the Estates. LAAC's evidentiary objections to the Trustee's declaration (Dkt. # 66) are

---

[1] Case no. 2-13-cv-09538-PSG stems from an appeal of an order in adversary proceeding no. 2:12-ap-01600-BR).

deemed MOOT, and its motion to strike the Trustee's request for judicial notice (Dkt. # 67) is DENIED.

I had many concerns about this order for a number of reasons. First, since the Trustee had not filed the motions to revoke SCIC's derivative status with me, I had no independent basis to determine the appropriateness of granting such a motion. In addition, I had serious questions as to whether the District Court intended that its order apply to other adversary proceedings not before the District Court, due to lack of jurisdiction and problems with the due process rights of other litigations to the other adversary proceedings.

On December 3, 2014, I conducted status conferences on numerous adversary proceedings pending in these cases. I discussed with the parties the District Court's November 2014 order and my intention to comply with the instructions contained in that order. Following the conclusion of these status conferences, I realized that I could not draft the required order without further clarification from the District Court on a number of issues.

Accordingly, on December 9, 2014 I made a "Request for Clarification and Instructions from the District Court" which included the following:

> Procedural Questions
>
> It is unclear why the trustee brought his motion to revoke SCIC's authority to act derivatively on behalf of the estates and to have the trustee substituted for SCIC as a representative of the estates (the "Trustee's Motion") by filing that motion in the first instance in the District Court in an adversary proceeding then on appeal before the District Court rather than in the Bankruptcy Court in the underlying Bankruptcy Cases. However, if it were appropriate for the trustee to bring the Trustee's Motion before the District Court rather than before this Court, would it not also be appropriate for the District Court to enter its own order

-10-

resolving the Trustee's Motion rather than directing this Court to enter such an order? This would permit a party that wished to appeal the order to appeal directly to the Ninth Circuit Court of Appeals. If, on the other hand, this Court enters that order, any appeal of the order would go back once again to the District Court on appeal. Is this what the District Court intended?

Further, as the Trustee's Motion was brought in the first instance in the District Court rather than in this Court, this Court has nothing before it, and therefore no evidentiary record and no factual findings, upon which to rely in issuing a ruling. Would the absence of such a record not itself be a basis upon which such an order could be set aside on appeal? Is this what the District Court intended?

<u>Due Process Concerns</u>

This Court's order that originally granted SCIC derivative standing applied not only in the above adversary proceeding, it applied in the Bankruptcy Cases generally and in all adversary proceedings pending in the Bankruptcy Cases. However, the appeal in which the November 24, 2014 Order was entered dealt only with a single adversary proceeding (i.e., adv. no. 2:12-01600-BR). There are several parties to the other adversary proceedings who are not parties to the above adversary proceeding and who were not, therefore, served with the Trustee's Motion and were not, therefore, given any opportunity to appear and be heard with regard to the relief requested by that motion.

At the December 3, 2014 status conferences, counsel for a defendant in another pending adversary proceeding expressed concern over the fact that her client was not a party to the appeal and questioned whether the November 24,

2014 Order applied to her case. Attorneys representing other defendants in the same situation who were present also indicated concerns about the applicability of the November 24, 2014 Order to their matters, including its impact on current discovery deadlines and other litigation-related issues. This Court responded that it appeared from the language of the November 24, 2014 order that it was the District Court's intention for this court to issue an order that would apply to all of the Bankruptcy Cases and all pending adversary proceedings. Counsel for the chapter 11 trustee agreed that it was the District Court's intention for the November 24, 2014 Order to apply to the Bankruptcy Cases and all adversary proceedings.

However, in recognition of the due process issues that might well be raised by such a broad interpretation of the November 24, 2014 order, the trustee's counsel suggested that he might file parallel motions to revoke SCIC's derivative standing in the other adversary proceedings, some of which are the subject of appeals pending before the District Court and others of which are the subject of appeals pending before the Ninth Circuit. Trustee's counsel did not specify the court or courts in which he plans to bring these motions and apparently did not contemplate the prospect that any of these motions might be decided in a manner adverse to the trustee or in inconsistent manners.

In light of the foregoing, the Court hereby requests clarification and instruction from the District Court in the following respects:

1. Would the District Court prefer to enter its own order substituting the Trustee for SCIC and revoking SCIC's standing to act on behalf of the estate, or does the District Court want the Bankruptcy Court to proceed

-12-

> with the issuance of such an order?
>
> 2. Is it the intention of the District Court for any order concerning SCIC's authority to act on behalf of the estates to apply in all of the Bankruptcy Cases and in all of the adversary proceedings pending in those cases, or is such an order to apply only in the above-entitled adversary proceeding?

In response to my Request for Clarification and Instructions, the District Court issued an order on December 22, 2014 which concluded:

> For the reasons discussed above, the Court **ORDERS t**hat: (1) the Trustee is substituted for SCIC as the representative of the Estates; and (2) the authority of SCIC to act derivatively on behalf of the Estates is revoked.  This Order is limited to *In re ThinkFilm, LLC, 2:13-cv-9538-PSG*, stemming from the adversary proceeding 2:12-ap-01600-BR, in turn stemming from main bankruptcy 10-bk-10012-BR [sic].  It does not apply to any other cases.

Emphasis in original.

It is clear to me that counsel for the Trustee, an experienced bankruptcy lawyer, knew exactly what he was doing.  In seeking to convince the District Court to revoke standing in proceedings over which it had no jurisdiction and in which affected parties who were not afforded notice, the Trustee and his counsel took action in blatant disregard of their duties, as officers of the court, by deliberately bypassing me regarding the revocation of standing in proceedings not before the District Court.

Fortunately, the District Court in its order made it clear that its order only applied to the proceedings before it.  Had I followed the District Court's original order (which I would have done under protest), the Trustee's actions would have caused chaos and an incredible amount of litigation and huge costs both to these estates and innocent third parties.

C. Conclusion

In view of all of the above, it is clear to me that neither the Trustee nor his counsel can be trusted to properly manage the Related Debtors' estates. For all of the above reasons, and based on the entire exhaustive record of these Related Cases, I have concurrently entered orders by which I have dismissed each of the Related Cases and all of the adversary proceedings pending therein.

Date: May 27, 2015

*/s/ Barry Russell*
Barry Russell
United States Bankruptcy Judge